## Leslie et al. v. Belfi Brothers & Co., Inc., et al.

*William A. Gray*, for plaintiffs; *Yale L. Schekter*, for defendants.

SMITH, P. J., February 13, 1932.—The plaintiffs filed a bill in equity setting forth, inter alia, the following averments:

That the plaintiffs are a part of the Bricklayers, Masons and Plasterers International Union of America; that on January 8, 1929, an agreement in writing was entered into between the National Association of Marble Dealers

and the Bricklayers, Masons and Plasterers International Union of America that members of the latter organization were to be employed by the various members of the National Association of Marble Dealers; that the plaintiffs and defendants made an agreement in writing under date of January 1, 1931, for a period until January 1, 1934, incorporating the agreement of the parent bodies; that the agreement provides, inter alia, in article three, that "The party of the second part agrees to set with a competent force of mechanics whenever called upon to do so by the party of the first part, any work specified in Article II of this agreement, without restrictions ( excepting only such as has been manufactured in a penal institution, and is known as 'prison made'), and it is agreed if they shall fail to furnish a sufficient force when notified to do so, that the mechanics furnished will work in harmony with such other mechanics working under similar conditions as are obtainable."

That the agreement of January 1, 1931, also provides, in article twelve, as a modification of the original agreement, that the minimum wage scale of $1.50 an hour shall be effective, starting January 1, 1931.

That, notwithstanding the agreement between them, the defendant association, following a resolution of its body to that effect, gave notice to the plaintiff association that, starting on January 1, 1932, the wage of the marble setters should be ten dollars per day for eight hours' work.

That such resolution of the defendant association, if carried into effect, will be a breach of the covenants contained in article twelve of the agreement wherein it was provided that the minimum rate of wage would be $1.50 per hour; and that irreparable damage will be done to the plaintiffs, and that the plaintiffs, being without an adequate remedy at law, pray:

1. For an injunction, preliminary until hearing and perpetual thereafter, enjoining the defendant from carrying into effect its resolution reducing the wages of the marble setters to ten dollars a day for eight hours' work, effective on January 1, 1932, and for such other relief, etc.

On January 2, 1932, a hearing was had and testimony taken.

A reading of article twelve of the agreement shows that after fixing the minimum rate of wage at $1.50 per hour, it is "provided that in order to meet local conditions, the local organizations of the party of the second part, or local members or representatives of the party of the first part, may submit requests for changes in the wage scale to be effective on January 1st, or July 1st, of each year, not less than thirty days prior to one or the other of the dates above mentioned; but such local scale when established in any locality shall remain in effect for at least one year from the date when it becomes effective. The party of the first part agrees that requests for changes in the wage scale emanating from the local organizations of the party of the second part as provided in this Article shall receive prompt consideration in conference with the duly accredited representatives of the local organizations of the party of the second part, in each case, and an agreement reached, if possible; it is further agreed by both parties hereto that if an agreement on any local wage scale cannot be reached by negotiation as herein provided, the matter shall be settled by arbitration, and as the result of the arbitration shall be binding upon both parties to this agreement and upon all their members pending the result of any conference or arbitration provided for herein, no strike, lockout or stoppage of work, individually or collectively, shall be permitted."

It is the contention of the plaintiffs that the minimum rate of wage fixed by the agreement is definite and cannot be reduced during the term of the agreement. It is the contention of the defendants that article twelve provides for a change due to local conditions and that either the defendants or the plaintiffs

may on January or July 1st of each year request a change of the rate of the minimum wage stated, downward, and that such request, if disputed, should be settled by arbitration as provided.

The record in this case raises several very nice questions which are not free from doubt.

Agreements such as that between plaintiff and defendant, which limit wages and conditions of work, are to some extent in restraint of trade, and, therefore, should be rather strictly construed against restraint and liberally construed in favor of freedom of trade. The agreement in question was between members of a union and the employers of members of this union. The agreement originally fixed a minimum wage scale of $1.37½ per hour, which was subsequently amended by agreement to $1.50 per hour. The agreement was to extend to January 1, 1934; but the employers were not required to employ the members of the union, nor were the members of the union required to work for these employers; in other words, either could terminate the employment at any time. Article twelve of the agreement, while fixing a minimum wage, provided that in order to meet "local conditions" either of the parties to the agreement could *submit requests for changes* in the wage scale. Such requests for change in wage scale were to be followed by a conference between representatives of both parties. In the event of both parties failing to agree, the matter was to be submitted to arbitration, which should be binding upon the parties. It seems clear that under the language used in the proviso of this twelfth article, the wage scale could be raised or lowered without limitation, and that the lowering of the wage scale is not restricted either by the original rate of $1.37½ per hour or the amendment of $1.50 per hour. The language used in the agreement is "Changes in the Wage Scale." Had the parties intended to restrict this change to only the raising of the wage scale, it would have been easy to accomplish this result by the use of apt words.

Both parties seem to have misconceived the effect of the arbitration clause in the proviso of the twelfth article of the agreement. This arbitration clause is only to be used in the event of the failure to agree upon the change in the wage scale. The agreement plainly contemplates, first, an effort to agree and to reach an agreement in a conference of the representatives of both parties. There seems to be no suggestion of a conference in what was done by the defendant in changing this wage scale. The letter of November 3, 1931, from the defendant association to the plaintiff association is a notification of a resolution adopted by the defendant changing and fixing a different scale of wages from and after January 1, 1932. This is an arbitrary action of the defendant and not an attempt to have plaintiff agree or suggestion of a conference of representatives of both parties to try to reach an agreement. This, in itself, is a departure from the manner of changing the wage scale as fixed by the agreement between the parties. The conclusion follows that the wage scale has not been changed, since the plaintiff has not agreed to it and the method pointed out by the agreement has not been followed. Moreover, after an attempt to agree, and a failure, before the wage scale can be changed, the question must be submitted to arbitration. Here, again, the defendant association failed to meet the requirements of the agreement. The defendant has contended that it was the duty of the plaintiff to arbitrate before going into court, but the agreement required the defendant to arbitrate before changing the wage scale without the agreement of plaintiff. Again, the defendant was at fault in not taking all the steps necessary or required by the terms of the agreement before making a change in the wage scale. The equities of the parties should be considered, bearing in mind that there has been no legal change of the wage scale.

While it seems that the action of the defendant was unwarranted under the terms of the agreement between the parties, yet the question whether a court of equity should interfere, under the facts of this case, is not free from doubt. The agreement and the old wage scale is in force between the parties. The employee is not required to work for the employer association, nor is the association required to employ the members of the plaintiff association. In the event of the defendant employing the plaintiffs, however, the plaintiffs are entitled to be paid the wage fixed by the agreement between them. This being so, the employee is entitled to recover in a suit at law for the number of hours worked, and this would seem to be an adequate remedy for the employment of the one party by the other. It may be argued that this might give rise to a multitude of suits and that on this ground equity should entertain jurisdiction, but that matter may be considered if and when the matter is properly before the court. At the present time the action is premature.

*Decree.*—And now, to wit, February 13, 1932, the prayers of the petition for a preliminary injunction are dismissed and the injunction refused.